METHODIST HOSPITALS OF MEMPHIS, Plaintiff,

v.

Louis SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.

GEORGE WASHINGTON UNIVERSITY HOSPITAL, Plaintiff,

v.

Louis SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.

LUCY WEBB HAYES NATIONAL TRAINING SCHOOL FOR DEACONESSES AND MISSIONARIES, Plaintiff,

v.

Louis SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.

The ADMINISTRATORS OF The TULANE EDUCATIONAL FUND d/b/a Tulane Medical Center Hospital and Clinic, Plaintiff,

v.

Louis SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.

GREATER SOUTHEAST COMMUNITY HOSPITAL, et al., Plaintiffs,

v.

Louis SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.

Civ. A. Nos. 92–0009, 92–0041, 92–0870, 92–1120 and 92–0989.

United States District Court, District of Columbia.

July 17, 1992.

Ronald N. Sutter, Washington, D.C., for plaintiffs.

Neil H. Koslowe, Special Litigation Counsel, Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

These cases concern a Medicare regulation that implements a new statutory payment methodology for graduate medical education ("GME") costs borne by teaching hospitals. The regulation in question is a retroactive rule published in late 1989 that permits the Secretary of Health and Human Services ("Secretary") to reaudit hospitals' 1984 graduate medical education costs. Plaintiffs contend that the Secretary's regulation is invalid as contrary to the plain meaning of the statute, as an invalid retroactive rule, and as an arbitrary and capricious act.

Defendant claims that this Court lacks subject matter jurisdiction as administrative remedies are not yet final, and that in any case, the regulation at issue is valid.

Before this Court are defendant's motion to dismiss, and plaintiffs' and defendant's motions for summary judgment. In addition, plaintiffs have filed a motion to compel production. For the reasons that follow, we find that we have jurisdiction over this dispute and consequently deny defendant's motion to dismiss on jurisdictional grounds. On the merits, we grant plaintiffs' motion for summary judgment with the exception that we deny plaintiffs' motion for summary judgment with respect to PRRB's policy not to disclose dissenting opinions in EJR determinations and we deny defendant's motion for summary judgment.

I. *Background*

On April 7, 1986, Congress enacted Pub.L. No. 99–272, 100 Stat. 153–55 *et seq.*, 42 U.S.C. § 1395ww(h), which established new rules for reimbursing graduate medical education costs of hospitals participating in Medicare. The law provides for the Secretary to determine for each hospital an approved per resident amount for each cost reporting period beginning on or after July 1, 1985.[1] The per resident amount is the

---

**1.** For cost reporting periods beginning prior to July 1, 1985, Medicare reimbursed hospitals ac-

cording to reasonable cost principles.

average amount recognized as reasonable during a base period that began in fiscal year 1984, updated each year by an inflation factor.[2]

The regulations implementing the GME reimbursement rules established in the 1986 statute were issued on September 29, 1989. *See* 54 Fed.Reg. 40286 (codified at 42 C.F.R. § 413.86). Fiscal intermediaries [3] were instructed to determine the base period average per resident amount and hospitals were authorized to appeal the determination within 180 days of the notice. 42 C.F.R. § 413.86(e)(1)(v). The challenged regulations provided that the fiscal intermediaries "verify" or reaudit the hospital's base period GME costs in fiscal 1984 and "modify" the base period costs that would be used in computing the hospital-specific per resident amount. 42 C.F.R. § 413.86(e)(1)(ii).[4] Under standard Medicare reimbursement procedures, the Secretary has three years from the issuance of the notice of program reimbursement ("NPR") to correct for inappropriate or misidentified costs. *See* 42 C.F.R. § 405.-1885. The challenged regulation provides that if the hospital's cost report for its GME base year is no longer subject to reopening under 42 C.F.R. § 405.1885, the intermediary may apply the results of the reaudit only for purposes of the GME per resident amount methodology and not for the base year itself. 42 C.F.R. § 413.-86(e)(1)(iii). After completing the reaudits, the intermediaries are to issue to each hospital a notice of "its base period average per resident amount". 42 C.F.R. § 413.-86(e)(1)(v). Hospitals, if dissatisfied with the intermediary's determination, have 180 days from the date of the notice to file an appeal with the Provider Reimbursement Review Board ("PRRB"). 42 C.F.R. § 413.-86(e)(1)(v).

Plaintiffs in this action are six teaching hospitals whose allowable GME costs were found to be lower on reaudit than their 1984 base year cost report would indicate.[5] The suits were consolidated since the issues presented are identical. They bring this suit against Louis Sullivan, the Secretary of Health and Human Services.

The experiences of Methodist Hospitals of Memphis ("Methodist") and George Washington University Hospital ("GWU") are illustrative. On February 26, 1991, Blue Cross and Blue Shield ("BCBS") of Tennessee sent Methodist a notice of its per resident cost for the fiscal year ending December 31, 1984. BCBS determined that Methodist's allowable GME costs were $893,841 less than the amount determined by the 1986 audit of Methodist's 1984 cost report. Methodist did not have to refund the difference for 1984: however, the 1991 notice established the per resident amount to be used in calculating its GME payment for post-July 1, 1985 years. Similarly, GWU's costs were assessed at $8,861,049 for the fiscal year ending June 30, 1985, $4,236,299 lower than its previous audit.

**2.** 42 U.S.C. § 1395ww(h)(2)(A). To determine the GME payment for a cost reporting period year beginning on or after July 1, 1985, the Secretary multiplies that hospital-specific per resident amount by the weighted average number of full-time-equivalent ("FTE") residents in the hospital's residency program for the particular period. The Secretary then multiplies that number by the hospital's Medicare patient load for that period. 42 U.S.C. § 1395ww(h)(3).

**3.** Fiscal intermediaries are generally private insurance companies under contract to the government.

**4.** Generally, under Medicare, a provider of services must provide a cost report to its intermediary at the close of a fiscal year. The report will include the costs incurred during the fiscal year and the appropriate share of the costs to be apportioned to Medicare. 42 C.F.R. §§ 413.-20(b), 413.24(f); *Tucson Medical Center v. Sullivan*, 947 F.2d 971, 974 (D.C.Cir.1991). The intermediary then analyzes the cost report and informs the provider of a final determination of the amount of Medicare reimbursement. *Id.* at 974. A provider who is dissatisfied may appeal the determination with the Provider Reimbursement Review Board ("PRRB") within 180 days of the date of the notice of program reimbursement. *Id.*

**5.** The hospitals include the Greater Southeast Community Hospital located in Washington, D.C.; Fairfax Hospital located in Virginia; Methodist Hospitals of Memphis; George Washington University Hospital located in Washington, D.C.; Tulane Medical Center Hospital in Louisiana; and the Sibley Memorial Hospital of Washington, D.C.

These two hospitals appealed on August 12 and August 13, 1991 to the PRRB.[6] While the appeals were pending, the hospitals petitioned the PRRB for a determination that the PRRB had no authority to decide the issue of the validity of the Secretary's GME regulations, and that Expedited Judicial Review (EJR) would be appropriate. The PRRB found that the appeals involved mixed issues of law and fact and concluded that it should retain jurisdiction of the appeal. It denied the hospitals' petitions for EJR on November 8, 1991. Two of the five PRRB members dissented from the majority opinion; however, under new PRRB policy, their opinion was not published.

Plaintiffs contend that the Secretary's regulations are invalid insofar as they permit a determination of allowable GME base year costs for purposes of the per resident amount methodology under section 1886(h) of the Act that differ from the final, audited cost report for the GME base year itself. Specifically, plaintiffs argue that the plain wording of the statute mandates that the GME payment rate be based on the GME costs found to be reasonable for the GME base year, and that the regulation providing otherwise is invalid. They argue that the Secretary did not possess the express authority to issue a retroactive rule and that the reaudit regulation is arbitrary and capricious.

## II. *Jurisdictional Argument*

 Defendant in its motion to dismiss first claims that we are without jurisdiction to entertain this suit. Defendant argues that this Court is without subject matter jurisdiction to review the PRRB's denial of EJR status. Defendant bases this argument on the statutory language of the EJR provision, 42 U.S.C. § 1395oo (f)(1), and on the agency's implementing regulations. Specifically, defendant contends that the statute explicitly provides for judicial review if the PRRB determines that it lacks jurisdiction (a decision, in effect, that EJR

would be appropriate), but that the statute does not provide district court jurisdiction in cases where the PRRB turns down an EJR request. We resolve this question by referring to the language and the legislative history of the statutory provision.

In 1972, Congress created the Medicare reimbursement appeals process. Pub.L. No. 92–603, § 243(a), 86 Stat. 1420 (1972). As originally enacted, the statute required that a provider obtain a decision on the merits of all issues from the PRRB before it could seek judicial review. *See, e.g., Association of American Medical Colleges v. Califano*, 569 F.2d 101, 110 (D.C.Cir. 1977). However, as the PRRB must follow Medicare regulations and rulings, *see Bethesda Hospital Association v. Bowen*, 485 U.S. 399, 406–07, 108 S.Ct. 1255, 1259– 60, 99 L.Ed.2d 460 (1988); 42 C.F.R. § 405.- 1867, the Board could not invalidate a Medicare regulation. As a result, any challenge to the regulation itself was delayed while the provider obtained a determination from the PRRB.

In 1980, Congress amended section 1878(f)(1) of the Social Security Act, 42 U.S.C. § 1395oo (f)(1), to provide for expedited judicial review of Medicare regulations. Under the statute, the provider may petition the Board for a determination that it lacks jurisdiction, or the Board may decide *sua sponte* that it lacks such jurisdiction. Upon such a determination, the provider is permitted to file a judicial action seeking review of the appropriate regulation.

Quite simply, plaintiffs contend that they followed the appropriate procedural requirements to obtain expedited judicial review and that this Court has jurisdiction to review the regulation at issue pursuant to section 1878(f)(1), 42 U.S.C. § 1395oo (f)(1). Defendant claims that the statute and Medicare regulations do not provide for expedited judicial review where the PRRB does not explicitly permit it. We believe that defendant's interpretation of the stat-

---

**6.** They appealed on two grounds: that the intermediaries should have calculated the per resident amount on the basis of GME costs determined in the initial 1986 audits, rather than the

1990 verifications, and second, they challenged the merits of the 1990 adjustments to the base period cost reports.

ute is strained, and that we do have jurisdiction pursuant to 42 U.S.C. § 1395oo (f)(1) to hear this dispute.

To determine if this Court has jurisdiction to review, we first turn to the language of the statute. If Congress has spoken directly to the issue at question, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In construing congressional intent, we look to both statutory language and legislative history, and the court is " 'not required to grant any particular deference to the agency's parsing of statutory language or its interpretation of legislative history.' " *Washington Hospital Center v. Bowen,* 795 F.2d 139, 143 (D.C.Cir.1986) (quoting *Rettig v. Pension Benefit Guaranty Corp.,* 744 F.2d 133, 141 (D.C.Cir.1984)). Section 1878(f)(1) of the Social Security Act, 42 U.S.C. § 1395oo (f)(1), which is hardly a model of clarity, provides:

██ A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. [2] Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. [3] Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by civil action commenced within sixty days of the date on which notification of such determination is received. [4] If a provider of services may obtain a hearing under subsection (a) and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). [5] The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. [6] If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. [7] Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of title 5, United States Code, notwithstanding any other provisions in section 205. [8] Any appeal to the Board for action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) must be brought by such providers as a group with respect to any matter involving an issue common to such providers.[7]

We think it clear that the statute provides for our jurisdiction. The fourth and fifth sentences dictate that once a provider has filed a request for "a determination by the Board of its authority to decide the question of law or regulations", the Board must

---

7. Clauses numbered for ease of analysis.

issue its determination within thirty days after receiving the request and accompanying documents and materials. The sixth sentence provides that if the Board does not render its determination within thirty days, the provider may bring a civil action within the next sixty days.

Plaintiffs complied with all of the procedural requirements; they filed their request as well as additional information and material to aid the Board in determining whether it had authority to decide the issue.[8] The Board denied Methodist's request for an EJR determination on November 8, 1991, within the 30–day period, stating that

> the audit adjustments in dispute contain factual issues for the Board to decide which are all related to the legal issue raised so that all aspects of the appeal must be retained by the Board until the factual issues are decided. Consequently, the Board denies the request for EJR.

*See* Letter of November 8, 1991 from Jack Martin, Chairman of the PRRB, to Ronald N. Sutter, Plaintiff's Partial Administrative Record at 4. The Board explicitly relied on 42 C.F.R. § 405.1842(g)(2), which permits the Board to decline to make an EJR determination "[i]f there are factual or legal issues in dispute on an issue within the authority of the Board to decide." [9]

In this case, there is no dispute that the PRRB did *not* determine that it had authority to decide the validity of the Secretary's reaudit regulation. Rather, defendant claims that the PRRB properly followed the regulation interpreting the statute and that the regulation can only be reviewed

under the arbitrary and capricious standard.

However, defendant jumps the gun. As noted above, the first step for the court is to determine whether the statute itself speaks to the issue. Statutory interpretation is within the province of the court. *See Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9. It is only when the statute is "silent or ambiguous with respect to the specific issue" that the administrative interpretation controls if it is not arbitrary, capricious, or manifestly contrary to the statute. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. Here, the statute requires an actual determination of whether or not the PRRB has jurisdiction over the legal or factual questions presented. The fourth sentence indicates that the provider may request a "determination by the Board of its authority to decide the question of law or regulations relevant ...." The next sentence says that the Board "shall render such determination". This determination refers to the Board's authority to decide. It is mandatory, not discretionary.

The PRRB did not determine whether it had jurisdiction. Consequently, it did not issue a "determination" within the meaning of the 6th sentence of section 1878(f)(1). The Board's 30–day period ended on November 8, 1991. Plaintiffs' suit on January 2, 1992 was within 60 days and therefore timely filed.

Congressional intent supports our interpretation. Defendant's approach would introduce the very problem of delay that Congress sought to avoid with its amend-

---

**8.** *See* Plaintiffs' Partial Administrative Record at 62–80.

**9.** 42 C.F.R. § 405.1842(g) states:
(1) Within 30 days after the date of receipt (as defined in paragraph (i) of this section) of a provider's request and all necessary documentation the Board will issue a determination concerning its authority to decide the question of law, regulations, or HCFA Rulings relevant to the issues identified by the provider in its request.
(2) If there are factual or legal issues in dispute on an issue within the authority of the Board to decide, the Board will not make an expedited review determination on the particu-

lar issue but will proceed with a hearing. The Board has the authority to decide when two or more issues are sufficiently related to preclude separation for purposes of an expedited review determination on one or more of them and a hearing on the other or others.
(3) The Board will promptly notify the provider in writing of its determination and will send a copy of the determination to the intermediary.
(4) The Board's determination concerning its authority or its lack of a determination is not subject of the Secretary's review under § 405.-1875.

ment of the Social Security Act to provide for EJR. The EJR amendments were added to reduce the delay associated with futile appeals to the PRRB, when it did not have authority to determine the validity of the regulation or law. The House Report accompanying the statute, for example, decried the previous system because it required the provider to first bring a complaint about a regulation to the PRRB,

> even though the Board may not have the authority to reverse or overrule the regulation. (The Board has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge.) The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court. Title VIII addresses this problem by giving medicare providers the right to obtain immediate judicial review in instances where the Board determines that it lacks jurisdiction to grant the relief sought.

H.R.Rep. No. 1167, 96th Cong., 2d Sess. 394 (1980), U.S.Code Cong. & Admin.News 1980, 5526, 5757. Defendant would permit the PRRB to refuse to reach a determination of its authority if it believes that there are factual issues within its jurisdiction to decide, and defendant argues that such a determination by the PRRB is unreviewable. It is difficult to see how this would be much of an improvement over that which existed prior to the EJR amendments. The PRRB could still lack the jurisdiction to decide whether the regulation was invalid.

Under the statute, the PRRB may deny an EJR petition filed with respect to a relevant question in a proper appeal only if the Board has the authority to decide an appeal. The statute does not make EJR discretionary with the Board. The Board must make a determination of whether it has jurisdiction to decide the issue presented; if it does not make such a determination, 42 U.S.C. § 1395oo (f)(1) permits the provider to seek direct judicial review.

In summary, the PRRB failed to make a timely determination of whether it had or did not have jurisdiction over the merits of the dispute as required by 42 U.S.C. § 1395oo (f)(1).[10] We have no difficulty in deciding that we have jurisdiction to review the merits of plaintiffs' claims.

### III. *The Merits of the Regulation*

■ We next turn to plaintiffs' challenge to the merits of the regulations.

The basis for plaintiffs' claim of invalidity is that the reaudit regulation violates the plain meaning of Section 1886(h)(2)(A) of the Social Security Act. The Act provides:

> The Secretary shall determine for the hospital's cost reporting period that began during fiscal year 1984, the average amount recognized as reasonable under this title for direct graduate medical education costs of the hospital for each full-time-equivalent resident.

42 U.S.C. § 1395ww(h)(2)(A). Plaintiffs contend that the statute limits the Secretary to the determination of what was previously recognized as reasonable for GME base year costs, and does not permit the use of a different amount. Since the 1984 base year cost report was already final when the regulations were issued in 1989, plaintiffs argue that a reaudit and the concomitant use of different figures would be in contravention of the statute. It is plaintiffs' position that the use of the phrase "shall determine" refers to the amount for each full-time equivalent ("FTE") resident

---

**10.** Plaintiffs had also argued in the alternative that the PRRB's decision not to permit EJR was a final decision pursuant to the second sentence of 42 U.S.C. § 1395oo (f)(1). Under such an approach, plaintiffs argued that this Court would still be able to review the EJR determination under the arbitrary and capricious standard. Given our decision that the plain meaning of the statute required a determination of the Board's jurisdiction, we do not reach whether a determination by the PRRB that it has jurisdiction is reviewable as a "final decision" under 42 U.S.C. 1395oo (f)(1). However, we note that the brevity of the decision letter and the Board's lack of jurisdiction to overrule Medicare regulations raises serious doubts about the validity of the Secretary's EJR regulations and the decision in this case.

and not to the amount "recognized as reasonable under this title" for direct GME costs. Defendant argues that the regulation says "shall" which provides the Secretary with the discretion to determine what is reasonable and that it is "reasonable" to reaudit to ensure that the claimed GME base period costs were accurate and legitimate. *See* Statement of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motions for Partial Summary Judgment ("Defendant's Mem.") at 17. "Congress' mandate to the Secretary was to make a fresh determination of the per resident amount on the basis of accurate GME costs." *Id.* at 25.

We believe that the plain meaning of the statute does not authorize a reaudit of the 1984 base year costs. We are aided in our analysis by the recent opinion in *Georgetown University Hospital v. Bowen*, 862 F.2d 323 (D.C.Cir.1988) ("*Georgetown II*"), in which the Court of Appeals construed similar statutory language. In *Georgetown II*, the Court of Appeals had before it a statutory provision of the Medicare Act which instituted the prospective payment system over a four-year phase-in period. During the transition period, Congress directed the Secretary to determine reimbursement levels based in part on a calculation of the hospital's "allowable operating costs of inpatient hospital services" during a particular base year. *See* 862 F.2d at 324 (quoting 42 U.S.C. § 1395ww(b)(3)(A)). The regulations at issue in *Georgetown II* had mandated that when administrative and judicial review required that the base year figure be adjusted, such a revision would only have prospective effect—the adjustments would only become effective in the phase-in year beginning after the final decision on review. 862 F.2d at 325.

The Court of Appeals found that congressional intent was clear that adjustments to the base year were to have retrospective application as well.

> When Congress chose to incorporate the concept of "allowable" costs into the transitional payment system, it must surely have been aware of the statutory review process for such costs and how

such review would inevitably inform the content of any definition of the term "allowable"; we can find no cause to conclude that Congress nevertheless meant to convey some different, more qualified meaning for the term 'allowable' without telling us what it was.

862 F.2d at 326–327 (footnote omitted). The Court noted that Congress had provided for a transition period during which it was clear that Congress meant to keep some of the previous system intact, 862 F.2d at 327, and that Congress also clearly knew how to provide for greater agency discretion when it wanted to do so. *Id.* The Court found that its interpretation was consistent with the available legislative history. 862 F.2d at 328–29.

We think that the Court of Appeals decision in *Georgetown II* is persuasive. Although there are some differences between the two provisions, the principles of interpretation remain the same. The Court in *Georgetown II* interpreted statutory language that was similar to the language at issue in the case at bar. Reimbursement rates were to be based on the allowable costs "recognized under this title for such hospital for the preceding 12–month cost reporting period," 862 F.2d at 326 (quoting 42 U.S.C. § 1395ww(b)(3)(A)), instead of "recognized as reasonable under this title," 42 U.S.C. § 1395ww(h)(2)(A). The Circuit determined that such costs were those otherwise established through the administrative and judicial review scheme, and that the Secretary's approach of only readjusting the base year and the prospective years from the time of the final decision inappropriately "renders the definition of 'allowable' different for those intermediate years." 862 F.2d at 328. So too in the case at bar.

When Congress included the "average amount recognized as reasonable under this title" as the basis for the FTE resident computation, Congress must have known of the process of review that the provider's figures normally receive. The use of the words "recognized as reasonable under this title" referenced the reasonable cost determination for GME that was in effect in

fiscal 1984. If the figures were "recognized as reasonable" for the purpose of determining the costs in fiscal year 1984, they must also be recognized as reasonable for subsequent years. Such figures can not be redetermined at a later date so that there are two different "base-year" amounts being used. Congress could not have intended that the Secretary interpret "recognized as reasonable" to mean two amounts for fiscal 1984: one derived from the standard cost reporting and review process following the close of the fiscal year; and a lower figure recalculated once the Secretary realized that the year would become the base-year for subsequent determinations. Had it wanted a reaudit, Congress was well aware of how to indicate such. The Secretary's failure to use the amount recognized as reasonable for the base year in computing payment under the GME per resident amount violates the plain meaning of the statute.

The conclusion that Congress did not intend to authorize a reaudit follows naturally when looked at within the framework of the provision as a whole. Section 1886(h)(2)(A) is only the first of several paragraphs detailing the "approved FTE resident amount for each cost reporting period beginning on or after July 1, 1985." Subparagraph A specifies fiscal year 1984; the other subparagraphs outline the increases for subsequent years and how hospitals that did not have residency programs in fiscal 1984 should be treated. For example, subparagraph E provides that for hospitals that did not have an approved medical residency training program or were not participating in the program for a cost-reporting period beginning during fiscal 1984,

> the Secretary shall, for the first such period for which it has a such a residency training program and is participating under this title, provide for such approved FTE resident amount as the Secretary determines to be appropriate, based on approved FTE resident amounts for comparable programs.

42 U.S.C. § 1395ww(h)(2)(E). The difference between this clause and the language of (A) is striking—here the amount is an approved FTE as the Secretary determines to be appropriate, whereas in (A) it is the amount "recognized as reasonable". Subparagraph (E), by its terms, gives the Secretary much more discretion. In Section 1886(h)(4)(A), Determination of Full–Time–Equivalent Residents, Congress explicitly gave the Secretary authority to establish rules for the computation of the FTE residents. In contrast, the statute nowhere authorizes the Secretary to establish rules to determine the amount of costs recognized as reasonable. Where Congress chose different language, we must "'presume that Congress intended the terms to have different meanings.'" *Washington Hospital Center v. Bowen*, 795 F.2d 139, 146 (D.C.Cir.1986) (quoting *Wilson v. Turnage*, 750 F.2d 1086, 1091 (D.C.Cir.1984), *vacated on other grounds*, 755 F.2d 967 (D.C.Cir.1985)).

Additionally, at the time the statute was passed, the base year determinations for fiscal year 1984 were subject to revision. Any concern the Secretary might have had about the accuracy of those figures could have been addressed within the standard three-year period time.

To paraphrase Judge Oberdorfer's opinion in *Georgetown University Hospital v. Bowen*, 698 F.Supp. 290, 296 (D.D.C.1987), *aff'd*, 862 F.2d 323 (D.C.Cir.1988), a final determination that a particular cost was reasonable for graduate medical education costs in the base year should provide conclusive proof that the cost should be included in the hospital-specific rate under the GME per resident amount for years subsequent to the base year. There should be no need for a reaudit, and insofar as a reaudit is likely to lead to two different base-year computations, it is impermissible under the statute.

■ Additional support for this interpretation is provided by the general disfavor of retroactive rulemaking.[11] The Supreme

---

11. "In adjudication, retroactivity is the norm; in legislation it is the exception. In rulemaking, the administrative analogue to legislation, exceptions are fewer still." *Motion Picture Associ-*

Court has previously stated that an agency is precluded from issuing a retroactive rule absent an "express" statutory grant of power in the statute. *See Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("*Georgetown I*"). "Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." 488 U.S. at 208–209, 109 S.Ct. at 471–72. Indeed, in *Georgetown I,* the Supreme Court held that the Medicare Act does not grant general retroactive rulemaking authority to the Secretary, *see* 488 U.S. at 213, 109 S.Ct. at 474, and that statutes authorizing the issuance of Medicare rules and regulations "will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471.

In the preamble to the GME regulations, the Secretary indicated that he was not "relying on our general grant of rulemaking authority to support retroactive application". 54 Fed.Reg. 40314. Instead, defendant claims that the Medicare statute provides the "express" authority for the Secretary to issue GME regulations that have retroactive effect. *See* Defendant's Mem. at 31. Defendant points to an uncodified section of the statute that indicates that the GME amendments are to be effective for "hospital cost periods beginning on or after July 1, 1985" as providing the express authority. Pub.L. No. 99–272, § 9202(b), 100 Stat. 175 (1986). Defendant also notes that several sections of 42 U.S.C. § 1395ww(h) specifically provide that the operative date is for cost periods beginning on or after July 1, 1985, a date which was prior to the enactment of the GME amendments. *See, e.g.,* 42 U.S.C. § 1395ww(h); 42 U.S.C. § 1395ww(h)(2); 42 U.S.C. § 1395ww(h)(2)(C); 42 U.S.C. § 1395ww(h)(3).

Plaintiffs agree with defendant that several provisions in 42 U.S.C. § 1395ww(h) do expressly permit retroactive rulemaking,[12] but argue that such express provision for some items indicates that Congress knew how to permit retroactive rulemaking when it wanted to do so. They argue that the absence of any such explicit direction to retroactively establish GME costs "recognized as reasonable under this title" indicates that Congress did not want to provide retroactive power in this case. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment at 24–25. We agree.

While Congress expressly provided the Secretary with some authority to issue rules retroactively, this exception to the general rule of non-retroactivity does not mean that the Secretary may issue *any* retroactive regulations he cares to in implementing the statute. Specifically, the language of the statute weighs against finding retroactive power for the agency to institute new audit requirements. As discussed above, the provision's explicit command to develop rules to compute the FTE residents in 42 U.S.C. § 1395ww(h)(4)(A) indicates that Congress considered the need for the Secretary to develop procedures for certain aspects of the GME program; the absence of any such explicit provision for new determinations of reasonable cost gives rise to a strong inference against the Secretary's position. *Cf. Georgetown I,* 488 U.S. at 213–214, 109 S.Ct. at 474–75, *Fedorenko v. United States,* 449 U.S. 490, 512–13, 101 S.Ct. 737, 750, 66 L.Ed.2d 686 (1981); *Department of Air Force v. Federal Labor Relations Authority,* 877 F.2d 1036, 1041 (D.C.Cir.1989).

Accordingly, we find that 42 U.S.C. § 1395ww(h)(2)(A) does not permit a reau-

---

*ation of America v. Oman, 969 F.2d 1154, 1155 (D.C.Cir.1992).*

**12.** Specifically, plaintiffs point to 42 U.S.C. § 1395ww(h)(1) (providing for allocation of GME costs between Medicare trust funds); 42 U.S.C. § 1395ww(h)(2)(E) (providing for an approved FTE resident amount as the Secretary determines to be appropriate for those pro-

grams without an approved residency program in the fiscal year 1984); 42 U.S.C. § 1395ww(h)(3)(C) (to establish the fraction of the total number of inpatient-bed-days for the Medicare patient load); 42 U.S.C. § 1395ww(h)(5)(F)(ii) (to establish criteria for a geriatric residency or fellowship).

dit of the base year in order to determine the hospital specific per resident amount for GME costs. The Secretary's regulation constituted an unauthorized retroactive rule. Therefore the Secretary must use the base year costs previously recognized as reasonable for fiscal year 1984 to determine the direct GME costs of the hospital for each FTE resident.[13]

■ Finally, plaintiffs have moved to compel the production of the opinion of Keith Braganza, a member of the PRRB, dissenting from the Board's EJR determination and for summary judgment with respect to the agency's non-disclosure policy. The PRRB indicated that it was the Board's policy not to release dissents. However, the defendant's response to interrogatories indicated that this "policy" was adopted only nine days before the PRRB decision in this case was issued and after Braganza had discussed his views with the rest of the Board. Indeed, other PRRB dissents have been released and relied upon by district courts.

Plaintiffs argue that the Freedom of Information Act ("FOIA") considers dissents as part of the material that must be released. *See* 5 U.S.C. § 552(a)(2)(A). They argue that the dissents are part of the "record" that must be reviewed by the court. Defendant argues that the dissent is protected by the deliberative process privilege. However, this privilege applies to pre-decisional agency documents, and the dissent in issue is not pre-decisional in nature, as it is adjunct to the PRRB's majority decision to deny the request for EJR.

All materials not privileged are discoverable. Fed.R.Civ.P. 26(b)(1). Insofar as there are any .remaining issues in these cases, we grant plaintiffs' motion to compel production.

The arguments regarding the legality of the policy not to release dissents revolve around whether the Board's EJR determination is judicially reviewable.[14] As we do not decide whether a PRRB determination to deny EJR is reviewable as a final decision pursuant to 42 U.S.C. § 1395oo (f)(1), we likewise do not reach whether a policy to preclude publication of dissents by a member of the PRRB in an EJR determination is contrary to law. Accordingly, we deny plaintiffs' motion for summary judgment with respect to the PRRB's policy of non-disclosure of dissenting opinions.

In conclusion, we deny defendant's motion to dismiss and defendant's motion for summary judgment. We grant plaintiffs' motion for summary judgment except that we deny plaintiffs' motion for summary judgment with respect to PRRB's policy not to disclose dissenting opinions in EJR determinations. We hold that the Secretary's reaudit regulation, 42 C.F.R. § 413.-86(e)(ii), is unlawful as it conflicts with the plain meaning of 42 U.S.C. § 1395ww(h)(2)(A) and is an impermissible retroactive rule.

---

13. Plaintiffs also contend that the reaudit regulation is arbitrary and capricious. They base their argument on the fact that the Secretary delayed so long in issuing regulations; that the Secretary directed reaudit of "closed" years—those years that could no longer be reopened under other Medicare principles; that by regulation, hospitals are only required to retain certain records for four years and that the Secretary ordered a reaudit for years for which hospitals were not even required to retain audit records. Plaintiffs also argue that the regulations adopted new and restrictive constructions to be retroactively applied. We do not reach this issue as we find that the language of the statute does not permit a retroactive reaudit of the base year.

14. Plaintiffs argue that the policy of not releasing dissenting opinions in EJR cases exceeds the Board's rulemaking authority because it is not "necessary or appropriate" to carry out the provisions of Section 1878 of the Act. They argue that the policy violates the judicial review standards of the APA, because it restricts the court in its mandate to conduct a thorough and searching review of whether the decision was based upon a consideration of relevant factors.

In response, defendant argues that the Board's EJR determination are not final decisions, and hence not reviewable. Defendant also argues that requiring dissents to be published would be a waste of resources as the majority opinion would have to be more responsive.