987 F.2d 790
 300 U.S.App.D.C. 126, 81 Ed. Law Rep. 712,
40 Soc.Sec.Rep.Ser. 318,
Medicare & Medicaid Guide P 41,112
 ADMINISTRATORS OF the TULANE EDUCATIONAL FUND, d/b/a Tulane
Medical Center Hospital and Clinic, Appellee,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Appellant.
METHODIST HOSPITALS OF MEMPHIS, Appellee,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Appellant.
GEORGE WASHINGTON UNIVERSITY HOSPITAL, Appellee,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Appellant.
LUCY WEBB HAYES NATIONAL TRAINING SCHOOL FOR DEACONESSES AND
MISSIONARIES, a Corporation, Appellee,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Appellant.
GREATER SOUTHEAST COMMUNITY
HOSPITAL; Fairfax Hospital, Appellees,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Appellant.
 Nos. 92-5281 to 92-5285.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 19, 1993.
Decided March 9, 1993.
Rehearing and Rehearing En Banc
Denied June 30, 1993.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action Nos. 92cv01120, 92cv00009, 92cv00041, 92cv00870 and 92cv00989).
 Neil H. Koslowe, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Barbara C. Biddle, Asst. Director of Appellate [300 U.S.App.D.C. 128] Staff, Civ. Div., Dept. of Justice, Washington, DC, were on the brief, for appellant.
 Ronald N. Sutter, Washington, DC, for appellees.
 Before WALD, RUTH BADER GINSBURG and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 The Department of Health and Human Services ("HHS" or "agency") appeals the district court's decision invalidating the agency's 1989 regulations implementing a new statutory methodology, enacted by Congress in 1986, for reimbursing teaching hospitals for the graduate medical education ("GME") costs attributable to Medicare services. Under the statute, HHS is to determine, for fiscal year 1984, the average per resident amount of GME costs "recognized as reasonable" for each hospital, and then to use this 1984 base period figure to calculate the hospital's GME reimbursements for all subsequent years. The agency interpreted this statutory directive as permitting it to reexamine and reaudit previously approved, but possibly erroneous or unreasonable, 1984 GME costs, and promulgated reauditing regulations to that effect. Appellees, a group of six hospitals which receive Medicare funds ("Hospitals"),[1] successfully brought a facial challenge to the regulations, arguing that the statutory phrase "amount recognized as reasonable" unambiguously required HHS to employ, without modification, previously approved 1984 GME cost figures, and further, that the agency's reaudit regulations were impermissibly retroactive.
 
 
 2
 We disagree with the district court that the language of the statute is so plain. Specifically, we do not believe that Congress spoke directly to the precise question of whether HHS should, in determining the base period GME per resident amount, automatically adopt the GME sum approved for reimbursement to hospitals for 1984 or whether it retained the residual authority to reassess at a later date the reasonableness of that calculation for prospective use only. Given this ambiguity, we find that HHS reasonably determined that Congress would not likely have wished misclassified and nonallowable costs inadvertently reimbursed to hospitals for fiscal year 1984 to be "cemented" into the base period amount and indefinitely carried forward in the formula for future reimbursements. To avoid that eventuality, HHS must retain the ability to revisit its 1984 reimbursements for error, even though those figures had previously been found reasonable, since the sole purpose of the reauditing was to calculate the base period formula applicable under the 1986 statute for fiscal year 1985 and later years. Under those circumstances, the readjustment of the 1984 figures did not constitute impermissible retroactive rulemaking. For these reasons, we reverse the district court and uphold the agency's regulations.
 
 I. BACKGROUND
 
 3
 Health care providers that participate in the Medicare program are eligible to be reimbursed for medical education costs associated with an approved GME program that relate to Medicare services. Under previous HHS regulations, providers were required each fiscal year to file a "cost report," including GME costs, with a "fiscal intermediary" designated by HHS. 42 C.F.R. § 405.1801. The intermediary then determined the total amount of reimbursement due the provider in the form of a "notice of program reimbursement" ("NPR"), 42 C.F.R. § 405.1803, which could be challenged by the provider before the Provider Reimbursement Review Board ("Board"). 42 U.S.C. §§ 1395oo(a), (b); 42 C.F.R. §§ 405.1835, 405.1837. The Secretary of HHS could timely reverse, affirm or modify a Board decision. 42 U.S.C. § 1395oo(f)(1). By regulation, the Secretary also could, within three years, reexamine any determination by a fiscal intermediary, the Board or the Secretary. 42 C.F.R. § 405.1885. Finally, providers were entitled [300 U.S.App.D.C. 129] to obtain judicial review of Board decisions and any reversal, affirmance or modification by the Secretary. 42 U.S.C. § 1395oo(f)(1).
 
 
 4
 Until 1985, hospitals were reimbursed for GME costs under a "reasonable cost" system, 42 U.S.C. § 1395f(b)(1), but in 1985, the HHS promulgated new regulations specifying that hospitals would thereafter be reimbursed for the lesser of allowable costs for the current year or the hospitals' approved costs incurred during fiscal year 1984. 50 Fed.Reg. 27,722 (1985). However, in 1986, Congress itself passed Pub.L. No. 99-272, 100 Stat. 153-155 et seq., 42 U.S.C. § 1395ww(h) ("GME Amendments") which established a new methodology for calculating reimbursements for all periods beginning on or after July 1, 1985. The statute required HHS to first
 
 
 5
 determine, for the hospital's cost reporting period that began during fiscal year 1984, the average amount recognized as reasonable under this subchapter for direct graduate medical education costs of the hospital for each full-time-equivalent resident.
 
 
 6
 42 U.S.C. § 1395ww(h)(2)(A). Thus, HHS was directed to calculate a per resident amount for each hospital by dividing the amount of GME costs recognized as reasonable for the base period of 1984 (numerator) by the number of full-time equivalent ("FTE") interns and residents working at the hospital in 1984 (denominator). For hospitals that had no approved medical residency training program or did not participate in Medicare in 1984, HHS was to determine the "appropriate" per resident amount. 42 U.S.C. § 1395ww(h)(2)(E). To determine a hospital's GME reimbursement for 1985 and future years, the 1984 base period per resident amount, adjusted for inflation, would be multiplied by the number of FTE residents working in the hospital during the year in question, and that product would be multiplied by the hospital's Medicare patient load in the same year. 42 U.S.C. § 1395ww(h)(3).
 
 
 7
 By 1989, when HHS promulgated regulations to implement the 1986 GME Amendments, virtually all hospitals had already received NPRs for 1984, and in most cases, the regulatory three year reopening period had expired. Nevertheless, the new regulations permitted the fiscal intermediaries to reaudit the 1984 GME costs and "exclude[ ] from the base-period graduate medical education costs any nonallowable or misclassified costs," for purposes of determining the "base-period per resident amount." 42 C.F.R. § 413.86(e)(1)(ii). Acknowledging that the three year reopening period had expired for most hospitals, the Secretary stressed that the regulations "indicate[d] that if a hospital's base-period cost report is no longer subject to reopening under § 405.1185, the intermediary may modify the hospital's GME base-period costs solely for purposes of computing the per resident amount," and not to adjust the amount owed under the 1984 NPR. 54 Fed.Reg. 40,301 (emphasis added); see 42 C.F.R. §§ 413.86(e)(1)(iii). Moreover, the Secretary assured hospitals that "no new reimbursement principles will be applied during the reaudit. Rather, our intent is to ensure that the reimbursement principles in effect during the GME base period were correctly applied." 54 Fed.Reg. 40,301 (1989). Finally, hospitals were given 180 days to appeal any determination of their base period per resident amount. 42 C.F.R. § 413.86(e)(1)(v).
 
 
 8
 In 1990, the intermediaries began reauditing hospitals' cost reports and found that the allowable 1984 GME amount for each of the six appellee Hospitals was lower than the amount previously approved.[2] For instance, the fiscal intermediary for Methodist Hospitals of Memphis ("Methodist") determined that Methodist's allowable 1984 GME costs were $2,785,809, $893,841 [300 U.S.App.D.C. 130] less than the $3,679,650 approved by the intermediary in an NPR issued in 1986. Because more than three years had passed since the time the NPRs became final, the reaudits did not result in any recoupment of reimbursements for 1984 but only affected the base period calculation. Methodist appealed to the Board and filed a motion for expedited judicial review on the ground that the Board lacked authority to pass on the validity of the agency's regulations. By statute, the Board has thirty days to rule on such a motion, 42 U.S.C. § 1395oo(f)(1), and when that period expired without a ruling by the Board,[3] Methodist, joined by the five other appellees, filed the present action in district court challenging the legality of the regulations. The district court ruled for the Hospitals on summary judgment, finding the regulations invalid as contrary to the plain meaning and intent of the GME Amendments and as an unauthorized retroactive rule. Methodist Hospitals v. Sullivan, 799 F.Supp. 1210 (D.D.C.1992). The Secretary now appeals that decision.[4]
 
 II. ANALYSIS
 A. Statutory Intent
 
 9
 Under the familiar Chevron two-step analysis for reviewing an agency's construction of a statute, we ask first "whether Congress has directly spoken to the precise question at issue," and if not, we consider whether the agency's interpretation of the question left open by the statute is a reasonable one. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). Here the district court was confronted with the task of interpreting the statutory directive that HHS "determine, for the hospital's cost reporting period that began during fiscal year 1984, the average amount recognized as reasonable under this subchapter for direct graduate medical education costs of the hospital for each full-time-equivalent resident." 42 U.S.C. § 1395ww(h)(2)(A). The district court went no further than the first Chevron step, concluding that the statutory phrase "amount recognized as reasonable" clearly mandated that HHS use as the base for future payments the 1984 GME costs previously approved by the agency, and that "the plain meaning of the statute does not authorize a reaudit of the 1984 base year costs." 799 F.Supp. at 1217. We, however, find it necessary to proceed to the second Chevron station because we are not persuaded that the statutory phrase is without ambiguity in the context of the 1986 GME Amendments.
 
 
 10
 The Hospitals argue their case for nonambiguity on several fronts. First they say, and the district court held, "Congress could not have intended that the Secretary interpret 'recognized as reasonable' to mean two amounts for fiscal 1984: one derived from the standard cost reporting and review process following the close of the fiscal year; and a lower figure recalculated once the Secretary realized that the year would become the base-year for subsequent determinations." 799 F.Supp. at 1218. In the district court's view, "[i]f the figures were 'recognized as reasonable' for the purpose of determining the costs in fiscal year 1984, they must also be recognized as reasonable for subsequent years." Id. at 1218. The issue thus devolves into whether, assuming its knowledge of the long-standing regulation providing for a three year period for reopening approved costs, 42 C.F.R. § 405.1885, Congress in enacting the 1986 GME Amendments left some leeway for the eventuality that HHS might not be able to promulgate and implement regulations governing the new methodology until after that three year period had lapsed, or whether, even if the new regulations should be delayed until after the three year period, Congress clearly intended to prohibit the Secretary from reauditing the 1984 GME costs for past errors in order to establish an accurate base period per resident amount. The statutory text certainly does not address this administrative [300 U.S.App.D.C. 131] dilemma directly, and the Hospitals cite to no legislative history to show that Congress had any intent at all about it. HHS, predictably but persuasively, took the position in promulgating the reaudit regulation that it is "hard to believe that Congress intended that misclassified and nonallowable costs continue to be recognized through the GME payment indefinitely." 54 Fed.Reg. 40,301 (1989). Indeed, since the GME Amendments were enacted for the purpose of establishing a new and presumably more accurate methodology for reimbursing GME costs, the most natural assumption to be drawn from the statutory silence on the subject would be that Congress did not mean to preclude HHS from correcting past mistakes in the 1984 figure which would govern subsequent payments. In sum, we can find no convincing evidence, direct or indirect, that Congress meant to prohibit corrective reauditing of the 1984 GME cost figures.[5]
 
 
 11
 As a second arrow in their quiver, the Hospitals rely heavily on our decision in Georgetown University Hospital v. Bowen, 862 F.2d 323 (D.C.Cir.1988) ("Georgetown II" ), which involved a statutory four year transition period beginning in 1983 for shifting from a "reasonable cost" to a "prospective payment" system for Medicare reimbursement of hospital in-patient operating costs. Under the statutory scheme, HHS was to determine reimbursement using hospital-specific rates calculated on the basis of "the allowable operating costs of in-patient hospital services ... recognized under this subchapter for such hospital for the preceding 12-month cost reporting period." 42 U.S.C. § 1395ww(b)(3)(A). The HHS regulations, however, provided that when a hospital successfully appealed an intermediary's estimation of the 12-month base period costs to the agency or to a court, the finally approved figure would be used as the reimbursement base only in the phase-in year following the final decision on review. Georgetown II, 862 F.2d at 325. We said, however, in overturning those regulations, that by "allowable" costs Congress meant costs incurred during the reporting period that were finally determined to be allowable after all statutorily-authorized administrative and/or judicial review had been exhausted. Id. at 326-27; see also Tucson Medical Ctr. v. Sullivan, 947 F.2d 971, 976 (D.C.Cir.1991). On a "turnabout is fair play" rationale, the Hospitals argue here that an administratively "final" determination that a hospital's 1984 GME costs were reasonable precludes any later reassessment, for any purpose, of that same year's costs.
 
 
 12
 Georgetown II, while obviously involving similar subject matter, has little bearing on the specific issues in debate here. In that case, we construed the phrase "allowable operating costs ... recognized under this subchapter" to require HHS to apply a final administrative or judicial decision on the allowability of a particular cost retrospectively to the year under appeal. We simply did not believe that Congress intended that "preliminary estimates [of allowable costs], although administratively necessary, would somehow become final and unalterable before the review process under the statute had been completed." 862 F.2d at 327. The logic underlying our conclusion there was very different from that pressed upon us here by the Hospitals, i.e., that the directive in the GME Amendments to determine the "amount recognized as reasonable" for 1984 precludes HHS from ever reauditing that cost determination for purposes of computing a base period figure for use in succeeding years. HHS is in no way attempting here to "effectively cement[ ] unlawful calculations into the transition year payments by [300 U.S.App.D.C. 132] largely insulating them from review," as it was in Georgetown II. 862 F.2d at 328. Just the opposite. It is attempting to ensure that misclassified and nonallowable costs approved in NPRs for 1984 are not cemented indefinitely into future GME cost reimbursements.
 
 
 13
 Finally, and perhaps most importantly, the relevant phrase "amount recognized as reasonable under this subchapter" is on its face ambiguous. We know only one thing for sure, that it certainly could not have included any amounts already finally approved before the statute was enacted since, in 1986, every hospital's 1984 NPR was still subject to the three year reopening period. See 42 C.F.R. § 405.1885. But beyond that given, it is decidedly unclear that the statute meant to allow the Secretary to use only the GME cost figure that would emerge as reasonable through the regular NPR review and three year reopening process. It might just as well have permitted the Secretary the option of using a figure that would be "recognized as reasonable under this title" at a later time after more careful assessment. See also Dept. of Treasury v. FLRA, 960 F.2d 1068, 1072 (D.C.Cir.1992) ("[The statutory phrase] 'adversely affected' is simply an adjectival phrase, not a verbial phrase indicating the past tense, and hence allows alternative temporal readings. The language, in short, is ambiguous....").[6] In our own review of the statutes governing Medicare reimbursement, we have uncovered at least two other occasions in which Congress has used the phrase "recognized as reasonable." Section 1395x(v), pertaining to the manner in which HHS determines a cost to be reasonable, permits the Secretary to "provide for the establishment of limits [on certain costs] to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A) (emphasis added). Section 1395uu, concerning payments to promote the closing or converting of underutilized hospital facilities, provides that the Secretary, in determining the hospital's proper "transitional allowance," recognize "the outstanding portion of actual debt obligations previously recognized as reasonable for purposes of reimbursement." 42 U.S.C. § 1395uu(c)(1)(B) (emphasis added). We refer to these sections only to suggest that the phrase "recognized as reasonable," by itself, does not tell us whether Congress means to refer the Secretary to action already taken or to give directions on actions about to be taken. Context is all, and in this case, we believe the use of the 1984 figures for the indefinite future cautions us against a reading of the phrase that allows no elbow room for adjustments based on prior miscalculations or errors.
 
 
 14
 Because we agree with HHS that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2782.
 
 B. Reasonableness
 
 15
 In its proposed regulations to implement the GME Amendments, HHS reasoned that "[b]ecause the payment methodology required by [the statute] sets future payments using the Federal FY 1984 base-period amounts as the initial starting point, we believe that it is very important that inappropriate costs not be included in the base-period amount." 53 Fed.Reg. 36,591 (1988). The agency believed that it had erroneously reimbursed hospitals for various "misclassified" and "nonallowable" costs from fiscal year 1984, id. at 36,591-92, and that these errors explained in part why "the range of per resident amounts for the GME base year varies from below $10,000 to over $100,000 per resident," id. at 36,593. As an example of a misclassified [300 U.S.App.D.C. 133] cost, the Secretary cited "physicians' compensation costs for services to the hospital that are not specifically and directly related to approved educational activities," and as an illustration of a nonallowable cost, the agency referred to "the costs of a medical school related to a hospital by common ownership or control ... that are not directly and specifically related to patient care furnished in the hospital." Id. at 36,591-92. The Secretary concluded that the GME Amendments "would seem to require that we correct these discrepancies in the base period since there is no provision in the law for correcting them later." Id. at 36,593.
 
 
 16
 In the preamble to the regulations, the Secretary responded to a comment that concerns about past erroneous reimbursements were "unfounded," by citing "several situations ... brought to our attention in which physicians' costs incurred for activities unrelated to GME ... costs [were] misclassified as GME costs or excessive administrative and general service costs were allocated to the GME cost center." 54 Fed.Reg. 40,300 (1989). The Secretary based the need for reauditing on the fact that "GME costs were not given sufficient scrutiny at the time because of the many changes taking place in Medicare generally." Id. at 40,301. Finally, the Secretary reiterated that the 1984 GME costs should be revisited because it was "hard to believe that Congress intended that misclassified and nonallowable costs continue to be recognized through the GME payment indefinitely." Id.
 
 
 17
 The agency's belief that Congress would resist permanently ingraining misclassified and nonallowable costs in future reimbursements to health care providers can hardly be deemed unreasonable or inconsistent with the congressional purpose of erecting a new and more accurate reimbursement methodology. See generally Shell Oil Co. v. EPA, 950 F.2d 741, 755 (D.C.Cir.1991); Ohio v. Dep't of the Interior, 880 F.2d 432, 441 (D.C.Cir.1989). The agency described its concerns on the rulemaking record and reasonably interpreted a statutory ambiguity to permit reauditing of 1984 GME costs in determining the "average amount recognized as reasonable" for the GME costs of each FTE resident. Moreover, recognizing that its own three year window for reassessing NPRs for 1984 had closed, the agency reasonably determined that its reauditing should only impact the base period per resident amount calculation that, by statute, would be used to compute reimbursements from 1985 onward. We do not accept, therefore, the Hospitals' argument that the agency acted unreasonably in failing to reaudit their 1984 GME costs within the three year regulatory reopening period. The three year gap between the 1986 enactment of the GME Amendments and promulgation of the agency's regulations in 1989, while unfortunate, was not an unreasonable period for developing, proposing, permitting comment, and finalizing a regulatory framework for a complex statutory scheme.[7]
 
 C. Retroactivity
 
 18
 As an alternative ground for its decision invalidating the agency's reauditing regulations, the district court found the regulations to be impermissibly retroactive because they allegedly lacked specific authorization in the statute. 799 F.Supp. at 1219. Because the 1986 GME Amendments require HHS to determine "an approved FTE resident amount for each cost reporting period beginning on or after July 1, 1985," 42 U.S.C. § 1395ww(h)(2), the statute, by its very terms, is intended to have some retroactive effect. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (regarding retroactivity, "where the congressional intent is clear, it governs"). Accordingly, any regulations implementing the statute will necessarily be retroactive insofar as they will alter the methodology for reimbursements beginning in 1985. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. [300 U.S.App.D.C. 134] 468, 471, 102 L.Ed.2d 493 (1988) ("Georgetown I" ) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). However, that does not answer the separate question of whether reauditing the 1984 GME cost figures to determine a base period amount for computing payments from 1985 forward is improperly retroactive. We conclude that the reauditing is not an exercise in retroactive rulemaking at all, let alone an impermissible one. The reaudit carries no impact for actual 1984 reimbursements and will be used only to calculate future reimbursements. A law is retroactive if it " 'takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past.' " Ass'n of Accredited Cosmetology Sch. v. Alexander, 979 F.2d 859, 864 (D.C.Cir.1992) (quoting Neild v. Dist. of Columbia, 110 F.2d 246, 254 (D.C.Cir.1940) (internal quotations omitted)). The Secretary's reauditing regulations do none of these things.
 
 
 19
 In Association of Accredited Cosmetology Schools, a new statute and its implementing regulations made past loan default rates an acceptable basis for terminating schools from a federally guaranteed student loan ("GSL") program, even though those rates were permissible under prior law. 979 F.2d at 859. We explained:
 
 
 20
 Instead of undoing past eligibility, ... the Act and the regulations merely require the Department [of Education] to look at schools' past default rates in determining future eligibility for GSL program participation. We regard this requirement as no different in substance than a lender's rule against extending credit to applicants with negative credit histories. Several cases have established that such a requirement does not operate retroactively. See Reynolds v. United States, 292 U.S. 443, 449 [54 S.Ct. 800, 803, 78 L.Ed. 1353] (1934) (holding that "[a] statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment"); Neild v. District of Columbia, 110 F.2d 246, 255 (D.C.Cir.1940) (holding that a law is not retroactive simply because it depends on " 'antecedent facts for its operation' ") (quoting Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 571 [54 S.Ct. 848, 853, 78 L.Ed. 1425] (1934)).... We accordingly hold ... that the Act and the regulations are not retroactive.
 
 
 21
 Id. at 865-66; see also Campbell v. United States, 809 F.2d 563, 571 (9th Cir.1987).
 
 
 22
 The situation is similar here. Rather than altering 1984 reimbursements, HHS's regulations simply permit the Secretary to use reaudited versions of those past figures for the purpose of determining reimbursements in succeeding years. Cf. Georgetown I, 488 U.S. at 204, 109 S.Ct. at 468 (regulation which changed reimbursement methodology and allowed HHS to recoup past payments under new methodology deemed impermissibly retroactive). Although in this case the GME Amendments themselves operate retroactively to alter the reimbursement methodology from July 1, 1985 onward, that contextual difference does not make the use of the reaudited 1984 figures in the new methodology retroactive in its own right. To put it another way, within the limited statutory retroactivity, the Secretary's reauditing regulations add nothing further that is retroactive: the regulations contemplate only the use of past information for subsequent decisionmaking. "In view of that conclusion, we need not consider [the Hospitals'] argument that ... the [statute] does not speak with the requisite clarity to justify retroactive rulemaking." Ass'n of Accredited Cosmetology Sch., 979 F.2d at 866.
 
 III. CONCLUSION
 
 23
 For the foregoing reasons, we reverse the district court and uphold the facial validity of HHS's reauditing regulations.
 
 
 24
 So ordered.
 
 
 25
 The appellees are Methodist Hospitals of Memphis, George Washington University Hospital, Lucy Webb Hayes National Training School for Deaconesses and Missionaries, the Administrators of the Tulane Educational Fund d/b/a Tulane Medical Center Hospital and Clinic, Greater Southeast Community Hospital, and Fairfax Hospital.
 
 
 
 [2]
 The Hospitals complain that they were only required to retain certain records relevant to the reimbursement calculation for four years after the end of a cost reporting period, 42 C.F.R. § 405.481(g), and therefore, at the time of reauditing, some no longer had this documentation. See Appellee's Brief at 9. HHS has responded by permitting the fiscal intermediaries, where necessary, to use records from later years for purposes of calculating the 1984 per resident amount. See 55 Fed.Reg. 36,063-64 (1990). The Hospitals do not directly challenge this practice in the present litigation, but they urge that the need to resort to this procedure is evidence of the irrationality of HHS's regulations
 
 
 [3]
 The Board issued an order denying expedited judicial review but did not rule on the validity of the reauditing regulations
 
 
 [4]
 On appeal, the HHS does not question the district court's subject matter jurisdiction. See Appellant's Brief at 3 n. 2
 
 
 [5]
 The district court also intimated, though the Hospitals do not argue it on appeal, that the fact that Congress did not expressly delegate to the HHS rulemaking authority to determine the "amount recognized as reasonable," whereas it did so authorize the HHS to "establish rules" for computing the number of FTE residents, supports the conclusion that Congress did not intend to allow any reauditing. 799 F.Supp. at 1218 (citing 42 U.S.C. § 1395ww(h)(4)(A)). But the two situations are quite different and justify different statutory treatments. The FTE figure was an entirely new concept in the GME Amendments and required HHS to establish a procedure for its calculation. By contrast, the concept of reasonable costs already was a mainstay of Medicare statutes and regulations, see 42 U.S.C. § 1395x(v), 42 C.F.R. § 405.1803, and there was no need to establish any new rulemaking authority for its determination
 
 
 [6]
 We also note that because the statute directs the HHS to "determine" the "average amount" of GME costs per FTE resident "recognized as reasonable," it seems unlikely that Congress intended for the HHS to simply look up a hospital's approved NPR for 1984 and plug it into the statutory formula. This activist language suggests that Congress must have intended for the agency to make some kind of substantive calculation on its own, which might involve as well a current assessment of the reasonableness of prior determinations
 
 
 [7]
 We address here only the facial validity of HHS's reauditing regulations. Each hospital has 180 days after the calculation of its base period per resident amount to challenge the accuracy of any determination before the Board. 42 C.F.R. § 413.86(e)(1)(v)